**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| DERRICK MARLER and ANDREW JORGENSEN, Individually and for Others Similarly Situated<br><br>v.<br><br>ROUND TABLE CONSULTANTS, LLC | **Case No. 2:26-cv-00317**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Derrick Marler (Marler) and Andrew Jorgensen (Jorgensen) (collectively Plaintiffs) bring this class and collective action to recover unpaid wages and other damages from Round Table Consultants, LLC (Round Table).

2. "Under Pennsylvania law, putative class members are 'properly characterized as parties to the action,'" and therefore, Round Table is prohibited from communicating or attempting to communicate with putative class members pursuant to "the protections contained in Rule 4.2 of the [Pennsylvania] Rules of Professional Conduct." *Dondore v. NGK Metals Corp.,* 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) (quoting *Bell v. Beneficial Consumer Disc. Co.*, 348 A.2d 734, 736 (1975)); *see*, W.D. Pa. LCvR 83.3(2); *see also Braun v. Wal-Mart Stores Inc.*, 60 Pa. D. & C.4th 13 (C.C.P. 2003).

3. Round Table employed Plaintiffs as its Hourly Employees (defined below), including in Washington County, Pennsylvania.

4. Plaintiffs and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But Round Table does not pay Plaintiffs and the other Hourly Employees for all hours worked.

6. Instead, Round Table rounds their clock in and clock out times to the nearest hour for its own primary benefit and to the detriment of Plaintiffs and the other Hourly Employees (Round Table's "rounding policy").

7. Additionally, Round Table failed to pay Plaintiffs and other Hourly Employees for time spent driving employees to and from job sites (Round Table's "drivetime policy").

8. Finally, Round Table does not pay Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek.

9. Instead, Round Table pays them "per diems," "regular mileage," "nontaxable mileage," and "truck allowances" that it fails to include in these employees' regular rates of pay for overtime purposes (Round Table's "per diem pay scheme").

10. Round Table's rounding policy, drivetime policy, and per diem pay scheme violate the Fair Labor Standards Act (FLSA), North Dakota law, and the Pennsylvania Minimum Wage Act (PMWA) by failing to compensate Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

11. Likewise, Round Table's rounding policy, drivetime policy, and per diem pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Plaintiffs and the other Hourly Employees of their agreed, earned overtime wages on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court also has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over Round Table because it is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

15. Venue is proper because Round Table lists its principal place of business in its filings with the Pennsylvania Secretary of State as located in Washington County, Pennsylvania and because a substantial part of the events or omissions giving rise to the claim occurred is in this District and Division. 28 U.S.C. § 1391(b).

16. Specifically, Round Table implemented its rounding policy, drivetime policy, and per diem pay scheme in Washington County and Jorgensen and other Hourly Employees worked in Washington County (as well as Clearfield County).

## PARTIES

17. Round Table employed Jorgensen as a flowback supervisor from approximately May 2019 until October 2025, including in Pennsylvania.

18. Round Table employed Marler as a supervisor from approximately December 2021 until August 2025 in North Dakota.

19. Throughout their employment, Round Table paid Plaintiffs under its rounding policy, drivetime policy, and per diem pay scheme.

20. Marler's written consent is attached as **Exhibit 1**.

21. Jorgensen's written consent is attached as **Exhibit 2.**

22. Plaintiffs bring this class and collective action on behalf of themselves, and similarly situated Round Table employees.

23. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who Round Table employed under its rounding policy, drivetime policy, and/or per diem pay scheme**

> **during the last three years through final resolution of this action (the "FLSA Collective Members").**

24. The putative Pennsylvania class of similarly situated employees is defined as:

> **All hourly employees who Round Table employed under its rounding policy, drivetime policy, and/or per diem pay scheme in, or were based out of, Pennsylvania[1] during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

25. The putative North Dakota class of similarly situated employees is defined as:

> **All hourly employees in North Dakota who Round Table employed under its rounding policy, drivetime policy, and/or per diem pay scheme during the past 2 years through final resolution of this matter ("North Dakota Class Members").**

26. The FLSA Collective Members, North Dakota Class Members, and the Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

27. Round Table is a North Dakota limited liability company headquartered in Washington, Pennsylvania.

28. Round Table is registered to do business in the Commonwealth.

29. Round Table may be served with process by serving its registered agent: **Corporation Service Company, 5235 North Front Street, Harrisburg, Pennsylvania 17110.**

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

## FLSA COVERAGE

30. At all relevant times, Round Table was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31. At all relevant times, Round Table was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32. At all relevant times, Round Table was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33. At all relevant times, Round Table had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

34. At all relevant times, Plaintiffs and the other Hourly Employees were Round Table's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35. At all relevant times, Plaintiffs and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

36. Round Table touts itself as a leading oilfield service provider of "experienced leadership & skilled crews."[2]

37. To meet its business objectives, Round Table employs workers, including Plaintiffs and the other Hourly Employees.

---

[2] https://www.syndicateenergy.com/ (last visited February 20, 2025).

38. While job titles and duties may differ, Plaintiffs and the other Hourly Employees are all subject to Round Table's same or similar policies—its rounding policy, drivetime policy, and per diem pay scheme—while performing similar work.

39. For example, Round Table employed Jorgensen as a flowback supervisor from May 2019 until October 2025, including in Pennsylvania during early 2025.

40. Round Table paid Jorgensen approximately $28 an hour.

41. Throughout his employment, Jorgensen typically worked 7 days a week for approximately 12-16 hours a day "on the clock" (84 to 112 hours a workweek), generally for 28 days on followed by 14 days off.

42. Jorgensen's job duties included cleaning out wells and getting them ready for use, removing fluids and debris from the wellbore, breaking down rigs, and crew management duties. such as

43. Round Table employed Marler as a supervisor from approximately December 2021 until August 2025, in North Dakota.

44. Round Table paid Marler approximately $23.50 an hour.

45. Throughout his employment, Marler typically worked 7 days a week for approximately 13-15 hours a day "on the clock" (91 to 105 hours a workweek), generally for 28 days on followed by 14 days off.

46. Marler's job duties included working with the flowback team, separating sand from oil, managing solids and fluids separation on sites, checking gas rates and oil rates, managing hands, and blowing wells.

47. Throughout their employment, Round Table classified Plaintiffs as non-exempt and paid them by the hour.

48. Plaintiffs' job duties likewise included transporting other Round Table employees from their accommodations near worksites to the worksites and back, in accordance with Round Table's direction and requirements, "off the clock" before and after their shifts.

49. Throughout their employment, Round Table required Plaintiffs to report their hours worked to Round Table.

50. But Round Table failed to pay Plaintiffs for all hours worked.

51. Instead, under its drivetime policy, Round Table requires Plaintiffs and other Hourly Employees to perform compensable work prior to their scheduled shifts.

52. Specifically, Round Table requires Plaintiffs to transport other Round Table employees from their accommodations nearby the worksite each workday before and after their shifts.

53. This "off the clock" work took Plaintiffs and other Hourly Employees approximately 30 minutes to 2 hours each workday.

54. The presence of the full crew at a drilling worksite is a fundamental necessity to the expeditious completion of Plaintiffs' and other Hourly Employees' primary job duties.

55. Each crew member Round Table assigns to a job performs a fundamental and necessary role.

56. Round Table assigns and requires Plaintiffs and other Hourly Employees to transport these crew members to the job site.

57. Without Plaintiffs' and other Hourly Employees' transport, in accordance with Round Table's policies and requirements, of crew members "off the clock," Plaintiffs and other Hourly Employees could not efficiently and effectively complete the primary job duties Round Table hired and assigned them to perform on the job sites, in accordance with Round Table's policies, procedures, and expectations.

58. This drivetime is therefore an integral and indispensable work duty for Plaintiffs, intertwined with their other job duties.

59. But Round Table failed to pay them for this compensable work time, which includes overtime hours.

60. Additionally, Round Table subjects Plaintiffs and other Hourly Employees to its rounding policy.

61. Specifically, Round Table automatically rounds Plaintiffs' and the other Hourly Employees' clock in and clock out times to the nearest hour for its own primary benefit and to the detriment of the Hourly Employees.

62. Round Table requires and expects Plaintiffs and the other Hourly Employees to perform their normal job duties immediately upon being "on the clock."

63. Thus, under its rounding policy, Plaintiffs and the other Hourly Employees are denied wages for hours worked, and overtime wages for overtime hours during workweeks in which they work more than 40 hours.

64. Round Table requires Plaintiffs and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

65. At the end of each pay period, Plaintiffs and the other Hourly Employees receive wages from Round Table that are determined by common systems and methods that Round Table selects and controls.

66. Round Table does not pay Plaintiffs and the other Hourly Employees at the required overtime rates for all hours worked in excess of 40 in a workweek.

67. Instead, Round Table pays Plaintiffs and the other Hourly Employees under its per diem pay scheme.

68. Specifically, under its per diem pay scheme, Round Table pays Plaintiffs and the other Hourly Employees "Reg Milge (Regular Mileage)," "Trk Allow (Truck Allowance)," "Nc Reg Mile," "SUP RP," "Tow Milge (Tow Mileage)," "NonTaxMileage," "Snt (per diem)," "miscellaneous reimbursements," as well as generically labeled "bonuses," which were not reasonably calculated to reimburse expenses incurred.

69. Round Table fails to include these numerous reimbursements in Plaintiffs and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

70. For example, during the pay period ending January 13, 2024, Round Table paid Jorgenson numerous "reimbursements," which were in reality just additional wages, that it excluded from his regular rate of pay for overtime purposes:

| Earnings | | rate | hours | this period | year to date |
|---|---|---|---|---|---|
| Regular | | 26.0000 | 80.00 | 2,080.00 | 3,016.00 |
| Overtime | | 39.0000 | 88.00 | 3,432.00 | 3,432.00 |
| Holiday Pay | | 26.0000 | 12.00 | 312.00 | 312.00 |
| Reg Milge | | | | 739.20 | 919.20 |
| Trk Allow | | | | 980.00 | 1,190.00 |
| | Gross Pay | | | $7,543.20 | 8,869.20 |
| Deductions | Statutory | | | | |
| | Federal Income Tax | | | -1,188.27 | 1,188.27 |
| | Social Security Tax | | | -450.45 | 515.44 |
| | Medicare Tax | | | -105.35 | 120.55 |
| | ND State Income Tax | | | -96.46 | 96.46 |
| | Other | | | | |
| | Aflac | | | -8.28* | 16.56 |
| | BIBS | | | -75.00 | 75.00 |
| | Child Support | | | -133.89 | 267.78 |
| | Dental Care | | | -15.35* | 30.70 |
| | Med Benefits | | | -250.72* | 501.44 |
| | Vision Care | | | -3.45* | 6.90 |
| | 401K | | | -150.86* | 177.38 |
| | 401K Loan 1 | | | -55.12 | |
| | Adjustment | | | | |
| | NonTaxMileage | | | +1,500.80 | |
| | Snt | | | +1,050.00 | |
| | Net Pay | | | $7,560.80 | |

71. Similarly, Round Table paid Marler and the other Hourly Employees numerous "reimbursements," which were actually just wages that it failed to include in their regular rates of pay for overtime purposes.

72. Thus, under its per diem pay scheme, Round Table does not pay Plaintiffs and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek, in violation of the FLSA and Pennsylvania law.

## Class and Collective Action Allegations

73. Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 and Plaintiffs bring their claims as a collective action under Section 216(b) of the FLSA.

74. Like Plaintiffs, the other Hourly Employees are victimized by Round Table's rounding policy, drivetime policy, and/or per diem pay scheme.

75. Other Hourly Employees worked with Plaintiffs and indicated they were paid in the same or similar manner under Round Table's rounding policy, drivetime policy, and/or per diem pay scheme.

76. Based on their experience with Round Table, Plaintiffs are aware Round Table's rounding policy, drivetime police, and per diem pay scheme were imposed on other Hourly Employees.

77. The Hourly Employees are similarly situated in the most relevant respects.

78. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages, including overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

79. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

80. Rather, Round Table's rounding policy, drivetime policy, and per diem pay scheme render Plaintiffs and the other Hourly Employees similarly situated for the purpose of determining their right to earned wages, including overtime wages at the required rates for all overtime hours worked.

81. Round Table's records reflect the number of hours it recorded the Hourly Employees working "on the clock" each week.

82. Round Table's records also show it paid the Hourly Employees "per diems," various mileage "reimbursements," "truck allowances," etc. it failed to include in their regular rates of pay for overtime purposes.

83. The back wages owed to Plaintiffs and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

84. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Round Table's records, and there is no detraction from the common nucleus of liability facts.

85. Therefore, the issue of damages does not preclude class or collective treatment.

86. Plaintiffs' experiences are typical of the experiences of the other Hourly Employees.

87. Plaintiffs have no interests contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

88. Like each Hourly Employee, Plaintiffs have an interest in obtaining the unpaid wages owed under Pennsylvania, North Dakota, and federal law.

89. Plaintiffs and their counsel will fairly and adequately protect the interests of the Hourly Employees.

90. Plaintiffs retained counsel with significant experience in handling complex class and collective action litigation.

91. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Round Table will reap the unjust benefits of violating the FLSA, North Dakota, and Pennsylvania law.

92. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

93. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Round Table.

94. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

95. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

96. Among the common questions of law and fact are:

a. Whether Round Table rounded the Hourly Employees' punch in and punch out times to the nearest hour for its primary benefit;

b. Whether Round Table required, requested, suffered, or permitted the Hourly Employees to work "off the clock," including transporting coworkers;

c. Whether Round Table paid the Hourly Employees "reimbursements" not reasonably calculated to reimburse expenses, but rather additional wages;

d. Whether Round Table failed to include these "reimbursements" in calculating the Hourly Employees' regular rates of pay;

e. Whether Round Table failed to pay the Hourly Employees earned wages, including overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f. Whether Round Table's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

g. Whether Round Table's violations were willful.

97. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

98. The Hourly Employees are known to Round Table, are readily identifiable, and can be located through Round Table's business and personnel records.

## ROUND TABLE'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A *BONA FIDE* DISPUTE

99. Round Table knew it employed Plaintiffs and the other Hourly Employees.

100. Round Table knew it was subject to the PMWA's, North Dakota's, and the FLSA's overtime provisions.

101. Round Table knew the PMWA, North Dakota law, and the FLSA required it to pay non-exempt employees, including Plaintiffs and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

102. Round Table knew it was subject to the WPCL.

103. Round Table knew the WPCL required it to pay employees, including its Hourly Employees, all wages (including overtime) earned on their regular paydays and following the termination of their employment.

104. Round Table knew Plaintiffs and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours worked via its timekeeping system.

105. Round Table knew Plaintiffs and the other Hourly Employees were non-exempt employees entitled to overtime wages.

106. Round Table knew it paid Plaintiffs and the other Hourly Employees numerous "reimbursements."

107. Round Table knew these "reimbursements" were required to be, but were not included in Plaintiffs' and the other Hourly Employees' regular rates of pay for overtime purposes.

108. And Round Table knew the PMWA, North Dakota law, and the FLSA required it to pay Plaintiffs and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

109. Round Table's failure to pay the Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

110. Round Table's refusal to pay its Hourly Employees earned wages for all hours worked on their regular paydays and following the termination of their employment was unreasonable.

111. Round Table's failure to pay its Hourly Employees their earned wages was not the result of a *bona fide* dispute.

112. Round Table knew its conduct violated the FLSA, North Dakota law, the PMWA, and WPCL.

113. Round Table knowingly, willfully, and/or in reckless disregard carried out its unlawful rounding policy, drivetime policy, and per diem pay scheme that deprived Plaintiffs and the other

Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA, PMWA, WPCL, and North Dakota law.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

114. Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

115. Round Table violated, and is violating, the FLSA by employing non-exempt employees such as the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

116. Round Table's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

117. Accordingly, Round Table owes the FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

118. Because Round Table knew or showed reckless disregard for whether its rounding policy, drivetime policy, and per diem pay scheme violated the FLSA, Round Table owes the FLSA Collective Members these wages for at least the past 3 years.

119. Round Table is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

120. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
## (PENNSYLVANIA CLASS)

121. Jorgensen brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

122. Round Table's conduct violated the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

123. At all relevant times, Round Table was subject to the PMWA because Round Table was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

124. At all relevant times, Round Table employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

125. The PMWA requires employers, like Round Table, to pay non-exempt employees, including Jorgensen and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

126. Round Table violated, and is violating, the PMWA by employing non-exempt employees (Jorgensen and the other Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

127. Round Table's unlawful conduct harmed Jorgensen and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

128. Accordingly, Round Table owes Jorgensen and the other Pennsylvania Class Members the difference between the rate actually paid and the required overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

129. Finally, Jorgensen and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

**COUNT III**
**FAILURE TO PAY EARNED WAGES UNDER THE WPCL**
**(PENNSYLVANIA CLASS)**

130. Jorgensen brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

131. Round Table's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq*.

132. At all relevant times, Round Table was subject to the WPCL because Round Table was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

133. At all relevant times, Round Table employed Jorgensen and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

134. The WPCL requires employers, like Round Table, to pay employees, including Jorgensen and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

135. Round Table violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

136. Jorgensen's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

137. Round Table's unlawful conduct harmed Jorgensen and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

138. Round Table's failure to pay Jorgensen and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

139. Rather, Round Table knowingly failed to pay earned wages to Jorgensen and the other Pennsylvania Class Members.

140. Accordingly, Round Table owes Jorgensen and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

141. Round Table also owes Jorgensen and the other Pennsylvania Class Members in an amount equal to 25% of the total amount of wages due, or $500, whichever is greater. *See* 43 PA. STAT. § 260.10.

142. Finally, Jorgensen and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

**COUNT IV**
**FAILURE TO PAY OVERTIME WAGES UNDER NORTH DAKOTA LAW**
**(NORTH DAKOTA CLASS)**

143. Plaintiffs bring their North Dakota class claims on behalf of themselves and the other North Dakota Class Members pursuant to FED. R. CIV. P. 23.

144. Round Table was, and is, an "employer" under North Dakota law. NDCC § 34-14-01.

145. The North Dakota Class Members are "employees" under North Dakota law. N.D. Admin Code § 46-02-07-02(1).

146. Round Table violated and continues to violate North Dakota law by imposing its per diem pay scheme and drivetime policy on the North Dakota Class Members. *See*, NDCC § 34-01, *et seq.* and N.D. Admin Code § 46-02-07-01, *et seq.*

147. Round Table failed to pay the North Dakota Class Members overtime wages of "at least one and one-half times the regular rate of pay to any employee for hours worked in excess of forty hours in any one week." N.D. Admin Code § 46-02-07-02(4); *see also*, N.D. Admin Code § 46-03-01-01.

148. Round Table's conduct harmed the North Dakota Class Members by depriving them of earned overtime wages they are owed.

149. Accordingly, Round Table owes the North Dakota Class Members the difference between the wages actually paid and overtime wages actually earned. NDCC §§ 34-14-09, 09.1.

150. Because of Round Table's knowing or intentional failure to pay the North Dakota required overtime wages, Defendant willfully violated the North Dakota Administrative Code. N.D. Admin Code § 46-02-07-02(4).

151. The North Dakota Class Members are entitled to recover their unpaid overtime wages for at least the last two years, applicable interest, reasonable attorneys' fees and costs, and any other damages available under North Dakota law. NDCC §§ 34-14-09, -09.1, and -1.

## JURY DEMAND

152. Plaintiffs demand a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order designating this action as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Plaintiffs and their counsel to represent the interests of the Hourly Employees;

d. An Order finding Round Table liable to Plaintiffs and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e. An Order finding Round Table liable to Jorgensen and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f. An Order finding Round Table liable to Jorgensen and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

g. An Order finding Round Table liable to Plaintiffs and the other North Dakota Class Members for unpaid overtime wages owed under North Dakota law plus all other damages available under North Dakota law;

h. A Judgment against Round Table awarding Plaintiffs and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, WPCL, and North Dakota law;

i. An Order awarding attorney's fees, costs, and expenses;

j. Pre- and post-judgment interest at the highest applicable rates; and

k. Such other and further relief as may be necessary and appropriate.

Date: February 23, 2026

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: */s/Michael A. Josephson*
Michael A. Josephson, Esquire
PA ID No. 308410
Andrew W. Dunlap, Esquire
TX Bar No. 24078444
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch, Esquire
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR PLAINTIFFS AND THE HOURLY EMPLOYEES**